J. Paul Gignac, State Bar No. 125676
**ARIAS OZZELLO & GIGNAC** LLP
115 S. La Cumbre Lane, Suite 300
Santa Barbara, California 93105
Telephone: (805) 683-7400
Facsimile: (805) 683-7401
Email: j.paul@aogllp.com

Steven S. Derelian, State Bar No. 256054
**LAW OFFICES OF STEVEN S. DERELIAN**
5042 Wilshire Boulevard, Suite 522
Los Angeles, California 90036
Telephone: (323) 954-9030
Email: sarklaw@gmail.com

Eugene Feldman, State Bar No. 118497
Attorney at Law, APC
555 Pier Avenue, Suite 4
Hermosa Beach, California 90254
Telephone: (310) 372-4636
Facsimile: (310) 376-3531
Email: genefeldman@mindspring.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NADIA ALVAREZ and RACHEL FISHENFELD, residents of the State of California, suing on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GLOBAL TEL*LINK CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: CV10-6288 RGK (JCx)<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR: DAMAGES, RESTITUTION, DECLARATORY RELIEF, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMAND** |

1

ORIGINAL

## NATURE OF THE ACTION

1.      This is a consumer class action for, *inter alia*, violations of federal law and California state law arising out of, *inter alia*: (a) Defendants' failure to fully and adequately disclose to their customers certain charges that they will incur in connection with their use of Defendants' telephone service and the rates that will be charged for calls made using Defendants' telephone service; (b) Defendants' failure to disclose to their customers certain practices followed by Defendants in connection with their telephone service that adversely affect their customers' accounts; and (c) Defendants' practice of "cramming" unauthorized charges on their customers' accounts.   Defendants' wrongful conduct predictably involves small amounts of damages, and Defendants are attempting to carry out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.   Plaintiffs bring this action in their own right and on behalf of all others similarly situated.

2.      All allegations made in this First Amended Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge.   Each allegation in this First Amended Complaint either has evidentiary support or, alternatively, pursuant to Rules 8(e)(2) and 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, namely a violation of 47 U.S.C. § 201. Further, pursuant to 47 U.S.C. § 207, jurisdiction is proper in this Court because this is a suit for the recovery of damages under the provisions of the Federal Communications Act.   Jurisdiction is also conferred on this Court by 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005.   In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state

FIRST AMENDED COMPLAINT

1　law claims because all of the claims are derived from a common nucleus of
2　operative facts and are such that Plaintiffs ordinarily would expect to try them in
3　one judicial proceeding.

4　4.　　Venue is proper in this judicial district pursuant to 28 U.S.C. §
5　1391(b)(2) and §1446(a) because one or more of the Defendants transacts
6　substantial business within, and is subject to personal jurisdiction in, this judicial
7　district and because a substantial part of the events giving rise to the claims
8　asserted herein took place in this judicial district.

9　**PARTIES**

10　5.　　Plaintiff Nadia Alvarez (hereinafter "Plaintiff Alvarez") is, and at all
11　times relevant to the claims alleged herein was, a resident of Los Angeles,
12　California.

13　6.　　Plaintiff Rachel Fishenfeld (hereinafter "Plaintiff Fishenfeld") is, and at
14　all times relevant to the claims alleged herein was, a resident of Calabasas,
15　California.

16　7.　　As used herein, "Plaintiffs" shall mean and refer to Plaintiff Alvarez and
17　Plaintiff Fishenfeld, together.

18　8.　　Defendant Global Tel*Link Corporation (hereinafter "GT*L") is, and at
19　all times relevant hereto was, a privately-held Delaware corporation with its
20　principal place of business located in Mobile, Alabama. GT*L provides managed
21　telecommunications services to state and local correctional facilities including
22　customer service, call equipment management, billing and IT capabilities. These
23　telecommunications services enable incarcerated persons to communicate with
24　family members, friends, attorneys and other approved persons outside the
25　correctional facilities.

26　9.　　Plaintiffs are unaware of the true names, identities and capacities of the
27　defendants sued herein as DOES 1 through 10. Plaintiffs will amend this First
28　Amended Complaint to allege the true names and capacities of DOES 1 through 10

1    when ascertained.  Plaintiffs are informed and believe, and thereupon allege, that

2    each of the defendants sued herein as a DOE is legally responsible in some manner

3    for the events and happenings set forth herein and has proximately caused injuries

4    and damages to Plaintiffs as set forth below.

5    10.      As used herein, "Defendants" shall mean and refer to GT*L and DOES 1

6    through 10, collectively.

7    11.      Whenever, in this First Amended Complaint, reference is made to any

8    act, deed or conduct of Defendants, the allegation means that Defendants engaged

9    in the act, deed or conduct by or through one or more of their officers, directors,

10   agents,  employees  or  representatives  who  was  actively  engaged  in  the

11   management, direction, control or transaction of the ordinary business and affairs

12   of Defendants.

13   **DEFENDANTS' UNFAIR AND UNLAWFUL BUSINESS PRACTICES**

14   12.      GT*L contracts with state and local correctional facilities in California

15   and other states to provide telecommunications services which enable incarcerated

16   persons to communicate by telephone with family members, friends and other

17   persons who are not incarcerated.  GT*L provides its telephone service by means

18   of payphones that are located inside the correctional facilities.  The contracts

19   entered into by GT*L require GT*L to provide equipment that enables the

20   correctional facilities to monitor and record the calls being made and to approve or

21   validate the telephone numbers that each incarcerated person is permitted to call.

22   13.      GT*L's contracts also require that GT*L pay to the correctional facilities

23   a high percentage of the amounts charged to and collected from GT*L's customers.

24   As  a  result,  the  per-minute  rates  that  GT*L  charges  its  customers  are

25   extraordinarily high – often in excess of $1.00 per minute.

26   14.      The service that GT*L provides is an "exclusive" service – that is, GT*L

27   is the sole telecommunications provider that incarcerated persons at a particular

28   facility can use to communicate by telephone with family members, friends and

1   other persons who are not incarcerated.  Because of the "exclusive provider"
2   position that it occupies, GT*L is able to exploit its customers by charging them
3   exorbitant, undisclosed per-minute rates and excessive service charges.

4   15.     GT*L offers its customers an "advance pay" service that requires a
5   customer to establish and maintain – by means of prepayments made on a credit
6   card -- an advance pay balance.  The advance pay balance is then used to pay for
7   calls that are made to the customer by an incarcerated person.

8   16.     When a customer first establishes an advance pay account with GT*L,
9   the customer is required to make an initial prepayment of either $25.00 or $50.00
10  in order to create an advance pay balance.  However, Defendants fail to inform
11  their customers that they will be charged a service fee of either $4.75 (for a $25.00
12  initial pre-payment) or $9.50 (for a $50.00 initial prepayment) and that the service
13  fee will be deducted from their advance pay balance.  Defendants also fail to
14  inform their customers that they will be charged additional service fees at the rate
15  of $4.75 per $25.00 subsequently prepaid and that those service fees also will be
16  deducted from their advance pay balance.

17  17.     GT*L charges its customers for calls according to a rate schedule that
18  varies according to the distance between the customer receiving the call and the
19  incarcerated person making the call.  However, GT*L does not disclose to its
20  customers the per-minute rates that they will be charged for calls.

21  18.     Customers of GT*L, like Plaintiffs, do not learn of the service fees or the
22  per-minute rates until long after they have already paid them because GT*L does
23  not even send its customers monthly account statements.  Rather, only if a
24  customer requests an account statement will GT*L provide one to the customer.

25  19.     Because the persons making the calls are incarcerated, GT*L is required
26  to verify the legitimacy of each call that is being made.  However, GT*L's system
27  is incapable of validating calls at the time that they are placed.  Therefore, each
28  time that a customer receives a call from an incarcerated person, GT*L freezes or

1    holds some amount of the customer's advance pay balance pending verification of
2    the call.  The amount that is frozen by GT*L varies according to the classification
3    of the call – ranging from $14.71 to $21.62 – and the hold lasts for a minimum of
4    thirty minutes (typically closer to an hour) until the call can be validated.

5    20.    GT*L's undisclosed, systematic practice of holding or freezing a portion
6    of its customers' advance pay balances is problematic for two reasons. First, it
7    reduces the amount of the advance pay balance that is available to pay for calls
8    made to GT*L's customers by incarcerated persons and thereby forces GT*L's
9    customers to maintain a "reserve" advance pay balance that cannot be used to pay
10   for calls made by incarcerated persons. Second, it forces GT*L's customers to
11   make additional prepayments even before exhausting their existing advance pay
12   balance if they wish to be able to continue to receive telephone calls from
13   incarcerated persons.

14   21.    Customers of GT*L do not sign a written contract when they establish an
15   advance pay account with GT*L, and they receive no documentation from
16   Defendants at any time purporting to set forth: (a) the per-minute rates that will be
17   charged for telephone calls made to them by incarcerated persons; (b) the service
18   charges that will be assessed to them (including, but not limited to, the $4.75
19   service fee per $25.00 prepaid); and/or (c) Defendants' practice of placing a hold
20   or freeze on a portion of the advance pay balance of each customer's account each
21   time a call is made to the customer by an incarcerated person.

22   22.    GT*L, as a telecommunications company that provides prepaid calling
23   services, is required by law to maintain a toll free customer service number and to
24   employ a live operator to answer incoming calls to its toll free number 24 hours a
25   day, seven days a week.  However, GT*L only maintains a toll free number during
26   the hours of 6 AM to 10 PM Monday thru Friday and 8 AM to 7 PM on Saturday
27   and Sunday.  In addition, calls to GT*L's customer service center are often routed
28   directly into GT*L's automated call back system.

**FIRST AMENDED COMPLAINT**

## PLAINTIFF ALVAREZ'S EXPERIENCE WITH DEFENDANTS

23.     Plaintiff Alvarez became a customer of GT*L in or about February of 2009, when she established an advance pay account with GT*L in order to communicate by telephone with an individual who was initially incarcerated at the Men's Central Jail in Los Angeles, California, then transferred to the Twin Towers facility in Los Angeles, and ultimately returned to the Men's Central Jail.

24.     At the time that she established her advance pay account with GT*L, Plaintiff Alvarez was required to make and did make by credit card an initial pre-payment of $25.00 in order to create an advance pay balance that would be used to pay for calls placed to Plaintiff Alvarez by incarcerated persons.   However, Defendants failed to disclose to Plaintiff Alvarez that: (a) she would be charged a service fee of $4.75 in connection with her $25.00 initial prepayment, and the service fee would be deducted from her advance pay balance; and (b) she would be charged additional service fees at the rate of $4.75 per $25.00 subsequently pre-paid, and those service fees also would be deducted from her advance pay balance.

25.     Defendants also failed to disclose to Plaintiff Alvarez that: (a) because GT*L's system was incapable of validating calls at the time that they were placed, GT*L would freeze or hold some amount of her advance pay balance pending verification of each call that was made to her by an incarcerated person; and (b) as a result, Plaintiff Alvarez would be required to make additional prepayments even before exhausting her existing advance pay balance if she wished to be able to continue to receive telephone calls from incarcerated persons.

26.     Defendants also failed to disclose to Plaintiff Alvarez the per-minute rates that she would be charged for calls placed to her by incarcerated persons.

## PLAINTIFF FISHENFELD'S EXPERIENCE WITH DEFENDANTS

27.     Between approximately March 19, 2009 and April of 2009, Plaintiff Fishenfeld used the telecommunications service provided by GT*L in order to communicate with a person who was incarcerated at the Los Angeles County Jail

1  Twin Towers facility as well as another Los Angeles County Jail facility located in
2  Santa Clarita, California.  Plaintiff Fishenfeld set up an advance pay account with
3  GT*L in order to receive calls from incarcerated persons at these facilities.

4  28.       Thereafter, beginning in or about April of 2010 and continuing until June
5  of 2010, Plaintiff Fishenfeld once again used the telecommunications service
6  provided by GT*L in order to communicate with a person who was incarcerated at
7  the Los Angeles County Jail Twin Towers facility.  Plaintiff Fishenfeld set up an
8  advance pay account with GT*L in order to receive these calls as well.  This
9  incarcerated person was transferred to the "reception area" of the North Kern State
10  Prison in June of 2010, and, as a result, Plaintiff Fishenfeld was unable to
11  communicate with him further until his release from the reception area.

12  29.       On or about July 30, 2010, Plaintiff Fishenfeld attempted to receive a call
13  from the same incarcerated person at the North Kern State Prison but was unable to
14  do so because she was required to first set up a new account with GT*L.  On July
15  31, 2010, Plaintiff Fishenfeld attempted to set up a new account with GT*L, but
16  she experienced numerous difficulties in doing so.  As a result, it was not until
17  August 6, 2010 that Plaintiff Fishenfeld was finally able to start receiving calls
18  from the incarcerated person at the North Kern State Prison by means of the
19  telecommunications services provided by GT*L. The calls that Plaintiff Fishenfeld
20  has received since August 6, 2010 are not through a GT*L advance pay account
21  but, rather, through a GT*L billed account.

22  30.       During the period of time from March of 2009 through June of 2010,
23  Plaintiff Fishenfeld was required to make and did make by credit card multiple pre-
24  payments in installments of $25.00 and/or $50.00 in order to create an advance pay
25  balance that would be used to pay for calls placed to Plaintiff Fishenfeld by
26  incarcerated persons.    However, Defendants failed to disclose to Plaintiff
27  Fishenfeld that she would be charged service fees at the rate of $4.75 per $25.00
28  prepaid and that the service fees would be deducted from her advance pay balance.

31.    Defendants also failed to disclose to Plaintiff Fishenfeld that: (a) because GT*L's system was incapable of validating calls at the time that they were placed, GT*L would freeze or hold some amount of her advance pay balance pending verification of each call that was made to her by an incarcerated person; and (b) as a result, Plaintiff Fishenfeld would be required to make additional prepayments even before exhausting her existing advance pay balance if she wished to be able to continue to receive telephone calls from incarcerated persons.

32.    Defendants also failed to disclose to Plaintiff Fishenfeld the per-minute rates that she would be charged for calls placed to her by incarcerated persons.

33.    Plaintiff Fishenfeld's records reflect that between April 1, 2010 and June 5, 2010, she paid by credit card at least $550 in prepayments – all in increments of $25.00 or $50.00 – and thereby incurred and paid at least $104.50 in service charges to Defendants.

34.    When Plaintiff Fishenfeld contacted GT*L on July 31, 2010, she spoke with three different representatives of GT*L and twice requested that she be provided with the rules and regulations governing GT*L's accounts.  Plaintiff Fishenfeld provided her mailing address to two different GT*L representatives and was told that the rules and regulations would be mailed to her on August 2, 2010. However, Plaintiff Fishenfeld has never received from GT*L any rules or regulations governing GT*L's accounts.

## OTHER CUSTOMER COMPLAINTS

35.    Plaintiffs are not the only GT*L customers who are heard to complain about the business practices of Defendants.

36.    A customer of GT*L who is identified as keith74mom on the website www.prisontalk.com complained that: "Yes, I have had many problems with them [GT*L] – I could not receive calls even though I had money on the account.  This went on for two weeks.  I called daily, no [sic] everyone told me a different story. Very unprofessional and poor service !"

37.     Another customer of GT*L who is identified as kiddsgirl4life on the website www.prisontalk.com complained that: "I agree this company is awful...The rates are outrageous [...] hell they just have a legal license to steal people's hard earned money that could go for other things, you know it can't cost that much to operate the phone service...it cost less for an hour long phone call on the other side of the planet...They have the monopoly on the prison phone service so they take full advantage of those desperate to talk with their loved ones...They have no kind of customer service, forget trying to get reimbursed or credit for failed call or early terminated calls...It wouldn't surprise me that the facilities didn't get kickbacks for contracting them. Just another way to squeeze everything they can out of you."

38.     Another customer of GT*L who is identified as UserNamesRCrazy on the website www.prisontalk.com complained that: "Wasn't it MCI before? They were awful too from what I've read. I think ANY phone company handling prison/jail phones is going to be a problem, please keep in mind that the state gets a kickback from the income generated as well. The only people losing money is us [sic]. I have a limit on my phone which I placed myself, if my bill reaches $150.00 I am not allowed to accept collect calls. It sucks that I can set up a number for my son to call directly for three bucks per month, at ten cents per minute and he can't call because GTL or whichever other company were to step in won't allow the inmates to use such numbers...who can't call an 800 number? INMATES!"

39.     Another customer of GT*L sought support for a petition that she published on the website www.prisontalk.com and that stated in part: "We the undersigned are demanding an investigation of Global Tel Link, and their practices. We are also demanding that the prison systems dealing with Global Tel Link, cease doing business with them. They are in exclusive contracts with prisons throughout the United States to provide phone service between inmates and their families. Inmates who make collect calls have no option but to use Global Tel

1    Link. Their tactics put an unfair burden on families whose only contact may be

2    through phone calls. Global Tel Link is well aware of this and takes advantage of

3    inmate families in order to make a profit. Although we have complained in the

4    past, Global Tel Link continues to receive contracts from states with no

5    repercussions. Global Tel Link's business practices have deteriorated even more

6    since merging with MCI, a failed telecommunications company ... We are asking

7    the FCC, FTC, Consumer Affairs office, and our state and federal representatives

8    to investigate Global Tel Link, on our behalf. We are consumers, taxpayers, voters,

9    and citizens who do not deserve this treatment..."

10   40.      Another customer of GT*L aired her grievances about GT*L on the

11   website www.ripoffreport.com where she complained that: "I would also like

12   clarification as to pre-paid use, there is very little associated with it on your

13   website.   Which I find disturbing, since most consumer [sic] use the pre-paid

14   method and are not told of the connection surcharges associated with it's [sic] use.

15   In all actuality, the user pays 50.00 minimum fee, but other associated fees which

16   are not disclosed to the consumer are then taken out leaving a very small balance

17   for actual phone use ...

18        Global Tel Link is supposed to provide you with a rate of the accepted call,

19   and your website states that most billing rates are provided during the introduction

20   of the attempted collect call.  If the rate is not offered, contact the Billing and

21   Customer Service Department, however the consumer does not know this until

22   after the outrageous calls come in and customer service does not provide this

23   information voluntarily when the consumer begins using their service.

24        I am willing to pay the money I owe, but I want my account seriously looked

25   into. I happen to know there are at least fifteen others that have had the exact same

26   problem. I am sure that with all the people out there it will not be hard to file a

27   class action laws suit ..."

28   ///

## CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the class that Plaintiffs seek to represent ("the Class") shall be defined as follows: "all residents of the United States who, at any time during the two-year period of time predating the filing of the original Complaint in this action, established an advance pay account with GT*L and paid fees to GT*L in connection with that advance pay account."

42.    Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs also seek to represent a California resident subclass ("the California Subclass") defined as follows: "all residents of the State of California who, at any time during the four-year period of time predating the filing of the original Complaint in this action, established an advance pay account with GT*L and paid fees to GT*L in connection with that advance pay account."

43.    As used herein, "class members" shall mean and refer to the members of the Class and/or the members of the California Subclass.

44.    This action is brought and properly may be maintained as a class action pursuant to the provisions of F.R.Civ.P. 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) and satisfies the requirements thereof.

45.    While the exact number of members of the Class and the California Subclass is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class and/or the California Subclass is ascertainable based upon the billing records maintained by Defendants. Plaintiffs are informed and believe that the Class and the California Subclass each likely include thousands of members since, as of late 2006, more than fifty percent (50%) of all persons in the United States who were incarcerated under the auspices of the

1   Department of Corrections (as well as those incarcerated in hundreds of county
2   prisons and jails throughout the United States) communicated with persons outside
3   of their correctional facilities by using the telecommunications services provided
4   by GT*L. Therefore, both the Class and the California Subclass are sufficiently
5   numerous that joinder of all members of the Class and all members of the
6   California Subclass in a single action is impracticable under F.R.Civ.P. 23(a)(1),
7   and the resolution of the class members' claims through the procedure of a class
8   action will be of benefit to the parties and the Court.

9   46.     Common questions of law and fact exist as to the class members, as
10   required by F.R.Civ.P. 23(a)(2), and predominate over any questions that affect
11   only individual class members within the meaning of F.R.Civ.P. 23(b)(3).

12   47.     The common questions of fact include, but are not limited to:

13         (a)  whether Defendants have failed to fully and adequately disclose to
14   Plaintiffs and the other class members certain service charges that are assessed to
15   the class members (including, but not limited to, the $4.75 service fee per $25.00
16   prepaid) in connection with their use of Defendants' telephone service;

17         (b)  whether Defendants have failed to fully and adequately disclose
18   to Plaintiffs and the other class members Defendants' practice of placing a hold or
19   freeze on a portion of the advance pay balance of their accounts each time they
20   receive a call from an incarcerated person, thereby reducing the amount of the
21   advance pay balance that will be available to pay for calls made to Plaintiffs and
22   the other class members by incarcerated persons;

23         (c)  whether Defendants have failed to fully and adequately disclose to
24   Plaintiffs and the other class members the per-minute rates that they will be and
25   have been charged when calls are made to them by incarcerated persons;  and

26         (d)  whether Plaintiffs and the other class members have sustained
27   damages as a result of Defendants' undisclosed practices and, if so, the proper
28   measure and appropriate formula to be applied in determining such damages.

48.     The questions of law that are common to Plaintiffs and the other class members include, but are not limited to, the following:

(a) whether the practices of Defendants complained of herein and/or Defendants' failure to make full and adequate disclosures to their customers concerning such practices violate §201(b) of the Federal Communications Act;

(b) whether Plaintiffs and the other class members are entitled to the declaratory relief sought herein;

(c) whether the practices of Defendants complained of herein and/or Defendants' failure to make full and adequate disclosures to their customers concerning such practices violate one or more provisions of the Consumers Legal Remedies Act;

(d) whether the practices of Defendants complained of herein and/or Defendants' failure to make full and adequate disclosures to their customers concerning such practices constitute unfair, unlawful and/or fraudulent business practices under California Business and Professions Code § 17200, *et seq.*; and

(e) whether the practices of Defendants complained of herein and/or Defendants' failure to make full and adequate disclosures to their customers concerning such practices violates California Public Utility Code § 2890.

49.     Plaintiffs' claims are typical of the claims of the other class members whom they seek to represent under F.R.Civ.P. 23(a)(3) because Plaintiffs and each of the class members have been subjected to the same wrongful practices and have been damaged in the same manner thereby.

50.     Plaintiffs will fairly and adequately represent and protect the interests of the class members as required by F.R.Civ.P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and the California Subclass because they have no interests that are adverse to the interests of the other class members.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs

///

**FIRST AMENDED COMPLAINT**

1  have retained counsel who are competent and experienced in handling class action

2  litigation on behalf of consumers.

3  51.    A class action is superior to any other available methods for the fair and

4  efficient adjudication of the claims in this action under F.R.Civ.P. 23(b)(3) since:

5      (a)    the expense and burden of individual litigation make it

6  economically unfeasible for class members to seek redress other than through the

7  procedure of a class action;

8      (b)  if separate actions were brought by individual class members, the

9  resulting duplicity of lawsuits would cause undue hardship and expense to the

10  Court and the litigants by necessitating multiple trials of similar factual issues; and

11      (c)  absent a class action, Defendants likely would retain the benefits

12  of their wrongdoing, and there would be a failure of justice.

13  52.    In the alternative, this action is certifiable under the provisions of

14  F.R.Civ.P. 23(b)(1) and/or 23(b)(2) because:

15      (a)  the prosecution of separate actions by individual class members

16  would create a risk of inconsistent or varying adjudications with respect to

17  individual class members that would establish incompatible standards of conduct

18  for Defendants;

19      (b)  the prosecution of separate actions by individual class members

20  would create a risk of adjudications as to them that would, as a practical matter, be

21  dispositive of the interests of the other class members not parties to the

22  adjudications or substantially impair or impede their ability to protect their

23  interests; and

24      (c)  Defendants have acted or refused to act on grounds generally

25  applicable to the Class and the California Subclass, thereby making appropriate

26  final injunctive relief or corresponding declaratory relief with respect to the Class

27  and the California Subclass as a whole and necessitating that any such relief be

28  extended to the class members on a mandatory, class wide basis.

**FIRST AMENDED COMPLAINT**

53.     Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

54.     The names and addresses of the class members are readily available from Defendants' records.  Notice can be provided to the class members via first class mail or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law, with the minimal cost of such notice to be borne by Defendants.

## FIRST CLAIM FOR RELIEF

### (Violation Of The Federal Communications Act,

### 47 U.S.C. § 201)

55.     Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 54, inclusive, as though fully set forth herein.

56.     Plaintiffs bring this claim for relief on behalf of themselves, the members of the Class, and the members of the California Subclass.

57.     Defendants are common carriers engaged in interstate wireless communications for the purpose of furnishing communication services within the meaning of §201(a) of the Federal Communications Act ("FCA").

58.     Defendants' practices complained of herein constitute unjust and unreasonable charges and practices in connection with communication services and, therefore, violate §201(b) of the FCA.  In addition, Defendants' failure to make full and adequate disclosures of these practices to their customers violates CFR § 64.2401 and, therefore, violates §201(b) of the FCA.

59.     As a direct and proximate result of Defendants' violations of §201(b) of the FCA, Plaintiffs and the other class members have been damaged in an amount according to proof at trial.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Under The Declaratory Judgment Act,

### 28 U.S.C. § 2201, *et seq.*)

FIRST AMENDEDCOMPLAINT

60.     Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 54, inclusive, as though fully set forth herein.

61.     Plaintiffs bring this claim for relief on behalf of themselves, the members of the Class, and the members of the California Subclass.

62.     An actual controversy has arisen and now exists between Plaintiffs and the other class members, on one hand, and Defendants, on the other hand, concerning their respective rights and duties in that Plaintiffs and the other class members contend that Defendants have engaged in and are continuing to engage in the unlawful practices alleged herein and have failed and continue to fail to make full and adequate disclosures to their customers concerning these practices, while Defendants contend that their actions and conduct are lawful and proper.

63.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs and the other class members may ascertain their rights and duties with respect to Defendants' practices.

## THIRD CLAIM FOR RELIEF

### (Violation Of The Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)

64.     Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 54, inclusive, as though fully set forth herein.

65.     Plaintiffs bring this claim for relief on behalf of themselves and the members of the California Subclass pursuant to the Consumers Legal Remedies Act, California Civil Code §1750 *et seq.* ("the CLRA").

66.     The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or that have resulted, in the sale or lease of goods or services to consumers.

67.     Plaintiffs and each member of the California Subclass are a "consumer" within the meaning of California Civil Code §1761(d).

///

68. The telephone service that Plaintiffs and each member of the California Subclass obtained through Defendants comes within the definition of "services" set forth in California Civil Code §1761(b).

69. By engaging in the practices alleged herein and by failing to make full and adequate disclosures to their customers concerning these practices, Defendants have violated, and continues to violate, the CLRA in at least the following respects:

(a) in violation of section 1770(a)(4) of the CLRA, Defendants have used deceptive representations in connection with services;

(b) in violation of section 1770(a)(5) of the CLRA, Defendants have represented that services have characteristics or benefits which they do not have; and

(c) in violation of section 1770(a)(14) of the CLRA, Defendants have represented that a transaction confers or involves rights or benefits which it does not have or involve.

70. Pursuant to section 1782(a) and (d) of the CLRA, on September 24, 2010, Plaintiffs, by their counsel, notified Defendants, by means of a letter sent to Defendants via certified mail, of Defendants' particular violations of the CLRA, as alleged herein, demanded that Defendants correct said violations, and notified Defendants of their intent to seek damages and other remedies if Defendants failed to comply with the demands set forth in the letter. A true and correct copy of the notice and demand letter sent by Plaintiffs' counsel is attached hereto as Exhibit "A".

71. Defendants, by their counsel, responded to Plaintiffs' notice and demand letter in a letter dated October 25, 2010, but did so in a manner that failed to satisfy the requirements of section 1782(c) of the CLRA. A true and correct copy of the letter sent by Defendants' counsel in response to Plaintiffs' notice and demand letter is attached hereto as Exhibit "B".

72.     As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs and the other members of the California Subclass have been damaged in an amount according to proof at trial.

73.     Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiffs and the other members of California Subclass will continue to be injured by Defendants' actions and conduct.

74.     So as not to be unjustly enriched by their own wrongful actions and conduct, Defendants should be required to disgorge and restore to Plaintiffs and the members of the California Subclass all monies wrongfully retained by Defendants, together with interest thereon.

75.     In violating the CLRA, Defendants have acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs and the other members of the California Subclass, and with knowledge that their conduct is substantially likely to vex, annoy and injure Plaintiffs and the other members of the California Subclass. As a result, Plaintiffs and the members of the California Subclass are entitled to recover punitive and exemplary damages against Defendants, pursuant to *California Civil Code* section 3294, in an amount according to proof at trial.

76.     In addition, pursuant to *California Civil Code* §1780(d), Plaintiffs and the other members of the California Subclass are entitled to recover the reasonable attorneys' fees and costs incurred by Plaintiffs in connection with the commencement and prosecution of this action.

## FOURTH CLAIM FOR RELIEF

### (Violation Of The Unfair Competition Law – California Business And Professions Code § 17200, *et seq*.)

77.     Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 54, inclusive, as though fully set forth herein.

78.    Plaintiffs bring this claim for relief on behalf of themselves and the members of the California Subclass.

79.    Defendants have engaged in and continue to engage in the unfair, unlawful and/or fraudulent business practices alleged herein and have failed and continue to fail to make full and adequate disclosures to their customers concerning these practices.

80.    By engaging in these practices, Defendants have committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200.

81.    Defendants' practices are unfair because Defendants do not fully and adequately disclose their practices to their customers at the time that their customers establish an advance pay account with Defendants and, therefore, are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to the members of the California Subclass.

82.    Defendants' practices are unlawful because they violate, *inter alia*, §201(b) of the FCA, CPUC §2890, CFR § 64.2401 and §1770 of the CLRA.

83.    Defendants have further engaged in an unlawful practice in violation of California Business and Professions Code §17538.9 (b)(6)(A) in that Defendants have failed to maintain a live operator to answer incoming calls to GT*L's toll free number 24 hours a day, seven days a week. Instead, Defendants maintain a toll free number during the hours of 6 AM to 10 PM Monday thru Friday and 8 AM to 7 PM on Saturday and Sunday. In addition, calls to GT*L's customer service center are often routed directly into GT*L's automated call back system.

84.    Defendants' practices are fraudulent because they have deceived and are likely to deceive Plaintiffs and the other members of the California Subclass.

85.    Unless Defendants are enjoined from continuing to engage in these unfair, unlawful and/or fraudulent practices, Plaintiffs and the other members of the California Subclass will continue to be injured by Defendants' practices.

86.     So as not to be unjustly enriched by their own wrongful actions and conduct, Defendants should be required to disgorge and restore to Plaintiffs and the other members of the California Subclass all monies wrongfully obtained by Defendants as a result of their unfair, unlawful and/or fraudulent practices, together with interest thereon.

## FIFTH CLAIM FOR RELIEF

### (Violation Of California Public Utilities Code §2890)

87.     Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 54, inclusive, as though fully set forth herein.

88.     Plaintiffs bring this claim for relief on behalf of themselves and the members of the California Subclass.

89.     Defendants have engaged in and continue to engage in the unlawful practices alleged herein and have failed and continue to fail to make full and adequate disclosures to their customers concerning these practices.

90.     California Public Utility Code §2890 "addresses the problem of 'cramming,' a practice in which consumers are charged for unauthorized services in their phone bills. . . . Often the charges which are 'crammed' on the customer's bill are relatively small, less than $10, and inconspicuously labeled.  If one does not carefully scrutinize the telephone bill, the crammed charge could easily be overlooked."

91.     By cramming unauthorized service charges on their customers' accounts, Defendants have violated California Public Utility Code §2890 which states, *inter alia,* that "a telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized."

92.     As a direct and proximate result of Defendants' violations of California Public Utility Code §2890, Plaintiffs and the other members of the California Subclass have been damaged in an amount according to proof at trial.

///

1    93.    Unless Defendants are enjoined from continuing to violate California

2  Public Utility Code §2890, Plaintiffs and the other members of the California

3  Subclass will continue to be injured by Defendants' actions and conduct.

4    94.    So as not to be unjustly enriched by their own wrongful actions and

5  conduct, Defendants should be required to disgorge and restore to Plaintiffs and the

6  other members of the California Subclass all monies wrongfully obtained by

7  Defendants as a result of their violations of California Public Utility Code §2890,

8  together with interest thereon.

9                          **PRAYER FOR RELIEF**

10        WHEREFORE, Plaintiffs pray for judgment as follows:

11                      **On The First Claim For Relief**

12        For compensatory damages in an amount according to proof at trial;

13        For prejudgment interest on the monies obtained by Defendants from the

14  date of collection through the date of entry of judgment in this action; and

15        For reasonable attorneys' fees pursuant to 47 U.S.C. §206.

16                    **On The Second Claim For Relief**

17        That this Court declare that Defendants' practices alleged herein and/or

18  Defendants' failure to make full and adequate disclosures to their customers

19  concerning these practices are unlawful.

20                     **On The Third Claim For Relief**

21        For compensatory damages in an amount according to proof at trial;

22        For prejudgment interest on the monies obtained by Defendants from the

23  date of collection through the date of entry of judgment in this action;

24        For disgorgement and restitution to Plaintiffs and the other members of the

25  California Subclass of all monies wrongfully obtained by Defendants;

26        For an order enjoining Defendants from engaging in the practices alleged

27  herein and/or mandating that Defendants make full and adequate disclosures to

28  their customers concerning these practices;

**FIRST AMENDED COMPLAINT**

For punitive and exemplary damages in an amount according to proof at trial; and

For reasonable attorneys' fees and costs pursuant to *California Civil Code* §1780(d).

### On The Fourth Claim For Relief

For an order enjoining Defendants from engaging in the practices alleged herein and/or mandating that Defendants make full and adequate disclosures to their customers concerning these practices;

For disgorgement and restitution to Plaintiffs and the other members of the California Subclass of all monies wrongfully obtained by Defendants; and

For prejudgment interest on the monies wrongfully obtained by Defendants from the date of collection through the date of entry of judgment in this action.

### On The Fifth Claim For Relief

That this Court declare that Defendants' practices alleged herein and/or Defendants' failure to make full and adequate disclosures to their customers concerning these practices violate California Public Utility Code § 2890;

For an order enjoining Defendants from engaging in the practices alleged herein and/or mandating that Defendants make full and adequate disclosures to their customers concerning these practices;

For disgorgement and restitution to Plaintiffs and the other members of the California Subclass of all monies wrongfully obtained by Defendants;

For compensatory damages in an amount according to proof at trial; and

For interest on the monies wrongfully obtained by Defendants from the date of collection through the date of entry of judgment in this action.

### On All Claims For Relief

For all attorneys' fees, expenses and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

For such other and further relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT

1 | Dated:  October 27, 2010

**ARIAS OZZELLO & GIGNAC** LLP

By: _____
        J. Paul Gignac
        Attorneys for Plaintiffs

1

## **JURY TRIAL DEMAND**

2

3    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

4    demand a trial by jury of all issues so triable in this action.

5    Dated:  October 27, 2010          **ARIAS OZZELLO & GIGNAC** LLP

6

7                                      By: _____

8                                          J. Paul Gignac
                                            Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

-26-          CV 10-6288-RGK(JCx)
FIRST AMENDED COMPLAINT FOR: DAMAGES, RESTITUTION,
DECLARATORY RELIEF, INJUNCTIVE RELIEF AND OTHER EQUITABLE
RELIEF

# ARIAS OZZELLO & GIGNAC LLP
## ATTORNEYS & COUNSELORS AT LAW

MIKE ARIAS ★
MARK A. OZZELLO
J. PAUL GIGNAC
ARNOLD C. WANG
MIKAEL H. STAHLE
DENIS M. DELJA#
SAMANTHA SMITH
HELEN KIM

★ MEMBER CA. NY, NJ & DC BARS
# MEMBER CA. DC & VA BARS

DIRECTOR OF FIRM OPERATIONS:
LAURA STUART

115 S. LA CUMBRE LANE
SUITE 300
SANTA BARBARA, CALIFORNIA 93105

TELEPHONE (805) 683-7400
FAX (805) 683-7401
E-MAIL aoglaw@aogllp.com
WEBSITE www.aogllp.com

LOS ANGELES OFFICE

HOWARD HUGHES CENTER
6701 CENTER DRIVE WEST
FOURTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90045
TELEPHONE (310) 670-1600
FAX (310) 670-1231

SENDER'S E-MAIL:
j.paul@aogllp.com
SENDER'S DIRECT EXTENSION: 201

September 24, 2010

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

**To:**  Global Tel*Link Corporation
2609 Cameron Street
Mobil, Alabama 36607

**Re:**  *Nadia Alvarez, et al. v. Global Tel*Link Corporation, et al.*
United States District Court, C. D. Cal. Case No. CV 10-6288 RGK(JCx)

Pursuant to Sections 1782(a) and (d) of the *California Civil Code*, this letter will serve to notify Global Tel*Link Corporation ("Defendant") that it has committed acts or practices declared unlawful under the California Consumers Legal Remedies Act, *California Civil Code*, Section 1750, *et seq.* ("the CLRA").

As detailed in the Complaint in this action that is enclosed herewith, Defendant has: (a) failed to fully and adequately disclose to its customers certain charges that they will incur in connection with their use of Defendant's telephone service and the rates that will be charged for calls made using Defendant's telephone service; (b) failed to disclose to their customers certain practices followed by Defendant in connection with its telephone service that adversely affect its customers' accounts; and (c) "crammed" unauthorized charges on its customers' accounts.

Plaintiffs Nadia Alvarez and Rachel Fishenfeld ("Plaintiffs"), on behalf of themselves and the members of the California Subclass as defined in the Complaint ("the California Subclass"), assert that Defendant has violated the CLRA. Specifically, Plaintiffs allege that Defendant has violated: section 1770(a)(4) of the CLRA which bars Defendant from "[u]sing deceptive representations or designations of geographic origin in connection with goods or services;" section 1770(a)(5) of the CLRA which bars Defendant from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" and section 1770(a)(14) of the CLRA which bars Defendant from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve."

On behalf of themselves and the members of the California Subclass, Plaintiffs hereby demand that Defendant remedy its violations of the CLRA as follows:

1. That Defendant identify by name and address all members of the California Subclass as defined in the Complaint;

ARIAS OZZELLO & GIGNAC LLP

Global Tel*Link
September 24, 2010
Page 2

2.   That Defendant fully disclose to its customers on a going forward basis the service fees that will be charged to them in connection with their use of Defendant's telephone service;

3.   That Defendant refund in cash to each member of the California Subclass the service fees paid by them plus interest at the statutory rate of 10% per annum running from the date such service fees were paid;

4.   That Defendant fully disclose to its customers on a going forward basis the per-minute rates that will be charged to them for their use of Defendant's telephone service;

5.   That Defendant refund in cash to each member of the California Subclass the amounts paid by them on a per minute basis for their use of Defendant's telephone service in excess of ten cents per minute;

6.   That Defendant stipulate to an injunction requiring it to refrain from its practice of holding or freezing a portion of its customers' advance pay balances; and

7.   That Defendant stipulate to an injunction requiring it to maintain a toll free customer service number and to employ a live operator to answer incoming calls to its toll free number 24 hours a day, seven days a week.

Unless Defendant agrees to and implements the terms and conditions set forth above within thirty (30) days of its receipt of this letter, Plaintiffs shall exercise their statutory right to amend the Complaint in the above-referenced action to include claims for damages and other relief against Defendant on behalf of the California Subclass under the CLRA.

ARIAS OZZELLO & GIGNAC LLP

By: _____
     J. Paul Gignac, Esq.
     Attorneys for Plaintiffs

# EXHIBIT B

-28-        CV 10-6288-RGK(JCx)
FIRST AMENDED COMPLAINT FOR: DAMAGES, RESTITUTION,
DECLARATORY RELIEF, INJUNCTIVE RELIEF AND OTHER EQUITABLE
RELIEF

# GT GreenbergTraurig

Robert J. Herrington
Tel 310.586.7700
Fax 310.586.7800
herringtonr@gtlaw.com

October 25, 2010

**Via Fax and U.S. Mail**

J. Paul Gignac, Esq.
Arias Ozzello & Gignac LLP
115 S. La Cumbre Lane, Ste. 300
Santa Barbara, CA 93105

Re:   CLRA Demand Letter in *Nadia Alvarez, et al. v. Global Tel\*Link Corporation*
      USDC Case No. CV 10-6288 RGK(JCx)

Dear Mr. Gignac:

    As you know, we represent Global Tel\*Link (GTL) in the putative class action you filed on behalf of Nadia Alvarez and Rachel Fishenfeld on August 24, 2010. After filing the complaint, you sent a letter to GTL dated September 24, 2010, which purports to provide notice of a claim under the Consumer Legal Remedies Act (CLRA). For the reasons set forth below, we do not consider your letter to provide proper pre-filing notice under the CLRA, and this letter should not be construed as a waiver of any objection to that letter.

    The CLRA requires a prospective plaintiff to give the prospective defendant written notice of her claim and an opportunity to cure 30 days prior to filing suit. Cal. Civil Code § 1782(a). The notice must provide a sufficiently detailed factual and legal basis so the defendant may understand the alleged violations and have an opportunity to attempt to remedy them. *See, e.g., Outboard Marine Corp. v. Sup. Ct.*, 52 Cal. App. 3d 30, 41 (1975) (the notice provision's purpose is to "provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished"); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1204 (S.D. Cal. 2005) ("Legislative goals would be eviscerated if consumers were allowed to sue for damages without first providing the statutorily mandated period for remediation."). Courts strictly apply these requirements. *Von Grabe v. Spring PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) ("strict application" of the notice requirement is necessary to effectuate the CLRA's larger purpose).

    Notwithstanding these strict requirements, your September 24 letter fails to provide adequate notice of any factual or legal basis for any purported violation of the CLRA, and indeed, your factual assertions are false. You assert that Alvarez and Fishenfeld set up AdvancePay accounts with GTL to help them communicate with inmates in various correctional facilities in California. You do not assert that there was anything wrong with the services provided by GTL and, based on your letter and the complaint, it appears your

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON·
LOS ANGELES
MIAMI
MILAN··
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME··
SACRAMENTO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO··
TYSONS CORNER
WASHINGTON, DC
WHITE PLAINS
ZURICH··

·OPERATES AS GREENBERG
 TRAURIG MAHER LLP
··STRATEGIC ALLIANCE

*LA 129,158,816v.1*

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
Los Angeles Office ■ 2450 Colorado Avenue ■ Suite 400 East ■ Santa Monica, CA 90404 ■ Tel 310.586.7700 ■ Fax 310.586.7800

J. Paul Gignac, Esq.
October 25, 2010
Page 2

clients received precisely what they bargained for. Your letter nonetheless claims that GTL violated the CLRA by: (i) supposedly failing to disclose the transaction charge associated with Alvarez and Fishenfeld's AdvancePay accounts; (ii) allegedly failing to disclose the rates for calls made using GTL's phone services; and (iii) somehow "cramming" unauthorized charges on customers' accounts.

Each assertion is false. GTL provides ample disclosures to customers, both in written materials and verbally, of the charges associated with AdvancePay accounts. These charges are included in GTL rate filings with the California Public Utilities Commission (CPUC) and the Federal Communications Commission (FCC). The charges are disclosed in presentations and brochures distributed to inmates and visitors at correctional facilities. The charges are disclosed on the website through which customers can fund AdvancePay accounts over the Internet. The charges are disclosed verbally in automated and live calls with GTL.

GTL also provides ample disclosure of its rates. The rates are set forth in GTL's filings with the California PUC and FCC. The rates are set forth in presentations and written materials distributed to visitors at correctional facilities. Moreover, each time an individual customer uses the AdvancePay account, he or she has the option to hear a disclosure of the applicable rates and charges.

Your final assertion that GTL "crammed" unauthorized charges on your clients' bills is baseless. Ample disclosures were provided about applicable rates and the AdvancePay service, your clients signed up and took advantage of the AdvancePay service and GTL's communications services, and GTL received payment for those services. There was no "cramming."

Your letter also fails to set forth any legal basis for you clients' purported CLRA claim. First, your letter cites section 1770(a)(4)'s restriction on using "deceptive representation or designations of geographic origin" as a purported basis for a CLRA claim. But this section is totally inapplicable, as it is limited to deceptive representations regarding "geographic origin." *Aaron v. U-Haul Co.*, 143 Cal. App. 4th 796, 808 (2006). Your letter makes no such allegation.

You also reference the restriction in section 1770(a)(5) on representing that "good or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Again, this section is inapplicable, as your letter does not assert that GTL made any such representation about "characteristics" or "benefits" that its services did not have.

Lastly, you cite section 1770(a)(14)'s restriction on representing that "a transaction confers or involves rights, remedies, or obligations which it does not have or involve." Again, the provision you cite does not apply. Your letter does not assert that GTL made any such representation.

*LA 129,158,815v.1*

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

J. Paul Gignac, Esq.
October 25, 2010
Page 3

Based on the foregoing, we believe your assertions and allegations against GTL are legally and factually baseless. We understand, however, that you intend to amend the complaint filed against GTL to assert additional remedies under the CLRA. When you file your amendment, we demand that you attach this letter, so the Court may be fully apprised of the facts and circumstances. Please also be aware that GTL intends to defend this matter vigorously, as it believes the allegations have no factual basis and no legal merit whatsoever. The company will not hesitate to seek appropriate remedies based on what it views as a frivolous lawsuit.

Best regards,

Robert J. Herrington