1 | GREENBERG TRAURIG, LLP
JEFF E. SCOTT (SBN 126308)
2 | GREGORY A. NYLEN (SBN 151129)
ROBERT J. HERRINGTON (SBN 234417)
3 | 2450 Colorado Avenue, Suite 400E
4 | Santa Monica, California 90404
Telephone: (310) 586-7700
5 | Facsimile: (310) 586-7800
Email: scottj@gtlaw.com
6 | nyleng@gtlaw.com
7 | herringtonr@gtlaw.com
Attorneys for Defendant
8 | GLOBAL TEL*LINK CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| NADIA ALVAREZ and RACHEL FISHENFELD, | CASE NO. CV 10-6288 RGK (JCx) |
|---|---|
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) OR IN THE ALTERNATIVE TO STAY UNDER PRIMARY JURISDICTION DOCTRINE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| GLOBAL TEL*LINK CORPORATION, | |
| Defendant. | [Request for Judicial Notice filed Concurrently] |
| | DATE: January 3, 2011 |
| | TIME: 9:00 A.M. |
| | DEPT: Courtroom 850 |
| | JUDGE: Hon. R. Gary Klausner |
| | DATE FILED: August 24, 2010 |
| | TRIAL DATE: None |

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LA 129,191,715v1

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 3, 2011, at 9:00 A.M. in Courtroom 850 of the above-captioned Court, located at 255 E. Temple Street, Los Angeles, California, Defendant Global Tel*Link Corporation ("GTL") will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted.

The grounds for this Motion are that, based on the judicially noticeable rate disclosures and other allegations of the FAC, Plaintiffs have not stated and cannot state a claim for relief.  In the alternative, the case should be dismissed and/or stayed under the primary jurisdiction doctrine.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and exhibits filed concurrently, and upon such other matter that the Court may properly consider in ruling thereon.

Pursuant to Central District Local Rule 7.1, the counsel for the parties met and conferred in writing and/or by telephone regarding this motion at various times on October 20, November 15, and November 17, 2010.  Plaintiffs indicated that they intend to oppose the relief requested.


DATED:  November 23, 2010          GREENBERG TRAURIG, LLP


By _____  /s/ Robert J. Herrington _____
ROBERT J. HERRINGTON

Attorneys for GLOBAL TEL*LINK CORPORATION

1

NOTICE OF MOTION AND MOTION  FOR DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LA 129,191,715v1

# TABLE OF CONTENTS

**Page No.**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    PLAINTIFFS' ALLEGATIONS .............................................................................. 3

III.   ARGUMENT ............................................................................................................ 6

    A.   Legal Standard for This Motion to Dismiss .................................................. 6

    B.   All Plaintiffs' Claims Should Be Dismissed Because The Business Practices
        Upon Which They Rely Cannot Support a Claim for Relief. ........................ 7

    C.   Each of Plaintiffs' Claims Should Be Dismissed for Additional Reasons. .. 12

        1.   The FAC Must Satisfy Federal Rule of Civil Procedure 9(b) ............ 12

        2.   Plaintiffs' Do Not Have Standing to Assert a Claim Under Section
             201 Because Their Calls Were *Intra*state. ........................................ 13

        3.   Plaintiffs' Claim Under Public Utilities Code Section 2890 Should
             Be Dismissed Because Plaintiffs Do Not Allege They Received Any
             Telephone Bill from GTL. ................................................................. 15

        4.   Plaintiffs' CLRA Claim Fails for Additional Reasons. ...................... 16

        5.   Plaintiffs' UCL Claim Also Fails Because They Do Not Allege
             Reliance and the Equitable Abstention Doctrine Applies. .................. 17

        6.   Plaintiffs' Request for Declaratory Judgment Fails Along With Their
             Other Claims. ..................................................................................... 18

    D.   To the Extent the Court Does Not Dismiss Any Claim, This Case Should Be
        Referred to the Public Utilities Commission or the Federal Communications
        Commission Under The Primary Jurisdiction Doctrine. ............................... 18

IV.    CONCLUSION ........................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page No.**

**Federal Cases**

*Ashcroft v. Iqbal,*
__ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)..........................................7

*AT&T Corp. v. Iowa Utils. Bd.,*
525 U.S. 366, 119 S. Ct. 721, 142 L. Ed. 2d 835 (1999).........................9, 10, 13

*Baxter v. Intelius, Inc.,*
2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010) ....................................10, 17

*Chladek v. Verizon N.Y. Inc.,*
96 Fed. Appx. 19 (2d Cir. 2004)...........................................................13

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ............................................................18

*Conder v. Home Sav. of Am.,*
2010 WL 2486765, at *2 (C.D. Cal. June 14, 2010) ....................................7

*Davel Communications, Inc. v. Qwest Corp.,*
460 F.3d 1075 (9th Cir. 2006) ....................................................10, 19, 20

*Evanns v. AT&T Corp.,*
229 F.3d 837 (9th Cir. 2000) ............................................................9

*Ford v. Hotwire, Inc.,*
07-CV-1312 H(NLS), 2007 WL 6235779, at *5 (S.D. Cal. Nov. 19, 2007)................12, 16

*Hart v. Comcast of Alameda,*
2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) ....................................20

*In re Actimmune Mrktg. Litig.,*
2009 WL 3740648, at *10-11 (N.D. Cal. Nov. 6, 2009) ................................17

*In re Consumer Information & Disclosure, etc.,*
24 FCC Rcd. 113880, ¶ 4, at 3 (2009) ..................................................20

*In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.,*
2009 WL 1703285, at *5 (C.D. Cal. June 17, 2009) ....................................16

*In re Facebook PPC Adver. Litig.,*
2010 WL 3341062, at *9 (N.D. Cal. Aug. 25, 2010) ....................................17

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ......................................................12, 13

*Lazy Y Ranch Ltd v. Behrens,*
546 F.3d 580 (9th Cir. 2008) ............................................................7

*Louisiana Pub. Serv. Comm'n v. FCC,*
476 U.S. 355, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986) ..............................13

*Marolda v. Symantec Corp.,*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ..................................................12

*Sanford v. Memberworks, Inc.,*
2010 WL 4158602, at *3 (9th Cir. Oct. 25, 2010)....................................12, 15

ii

*Smith v. Sprint Commc'ns Co.*,
    C 96-2067 FMS, 1996 WL 1058204, at *3-5 (N.D. Cal. Sept. 13, 1996)..........................................2, 9
*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................................12

**State Cases**
*Aaron v. U-Haul Co.*,
    143 Cal. App. 4th 796 (2006) ...........................................................................................16
*Byars v. SCME Mortg. Bankers, Inc.*,
    109 Cal. App. 4th 1134 (2003) .........................................................................................10
*Ctr. for Biological Diversity, Inc. v. FPL Group, Inc.*,
    166 Cal. App. 4th 1349 (2008) .........................................................................................18
*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) .........................................................................................17
*Feitelberg v. Credit Suisse First Boston LLC*,
    134 Cal. App. 4th 997 (2005) ...........................................................................................18
*Gallivan v. AT&T Corp.*,
    124 Cal. App. 4th 1377 (2004) .........................................................................................10
*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .....................................................................................................17
*Plotkin v. Sajahtera, Inc.*,
    106 Cal. App. 4th 953 (2003) ...........................................................................................10
*Shamsian v. Dep't of Conservation*,
    136 Cal. App. 4th 621 (2006) ...........................................................................................18

**Federal Statutes**
47 C.F.R. § 42.................................................................................................................4, 7, 19
47 C.F.R. § 61.19....................................................................................................................7
47 C.F.R. §§ 64.1100-1190....................................................................................................14
47 C.F.R. §§ 64.2400-2401...............................................................................................14, 15
47 U.S.C § 160.......................................................................................................................7
47 U.S.C. § 201(a)................................................................................................................13
47 U.S.C. § 206....................................................................................................................11
47 U.S.C. § 258....................................................................................................................14

**State Statutes**
Cal. Bus. & Prof. Code § 17538.9(b)(9)................................................................................11
Cal. Civ. Code § 1770..........................................................................................................16
Cal. Civ. Code § 19.............................................................................................................10
California Public Utilities Code § 2890............................................................................3, 6, 15
California Public Utilities Code § 495.............................................................................4, 8, 19

iii

**Federal Rules**

FED. R. CIV. P. 12(b)(6) ............................................................................................ 1, 6

**Other Authorities**

CAL. INDUS. R. 5.2 (as modified in Decision 07-09-019 (Sept. 6, 2007) ....................... 4, 8, 19

Federal Communications Act of 1934 Section 201 ....................................... 6, 13, 14, 15

*In re Policy & Rules Concerning The Interstate, Interex-Change Marketplace,*
FCC 96-424, 11 FCC Rcd. 20730 (1996) ............................................................. 7

*In re Truth-in-Billing & Billing Format,* 14 FCC Rcd. 7492, ¶ 21 (1999) ...................... 14

Madeleine Severin, *Is There A Winning Argument Against Excessive Rates for Collect Calls from Prisoners?,*
25 CARDOZO L. REV. 1469, 1471 n.10 (2004) ...................................................... 1

*Nat'l Ass'n Of State Util. Consumer Advocates v. F.C.C.,*
457 F.3d 1238 (11th Cir. 2006)*, op. modified,* 468 F.3d 1272 (11th Cir. 2006) ................. 14

Opinion Adopting Telecommunications Industry Rules at 18, 49-53 (July 23, 1998) ............ 8, 19

NOTICE OF MOTION AND MOTION  FOR DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LA 129,191,715v1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

This case is the latest in a long series of unsuccessful attempts to assert claims against providers of telecommunications services to prisoners. As one author has recounted, "[c]ourts have not, to date, granted relief in any of the twenty-two cases challenging prison phone rates…" or other practices.[1]  Plaintiffs apparently hope this Court will be the first. But like its failed predecessors, Plaintiffs' First Amended Complaint (FAC) fails to state any claim for relief and this case should be dismissed as a matter of law. To the extent the Court does not dismiss any claim, the case should be referred to the appropriate regulators under the primary jurisdiction doctrine.

Global Tel*Link Corporation (GTL) provides telecommunications services that enable inmates and prisoners to communicate with persons outside the jail or prison through payphones. One of the services GTL offers is called "AdvancePay," which enables individuals to set up a prefunded account that they can use to pay for (and control the cost of) collect calls received from inmates. Plaintiffs in this case are attempting to assert claims based on *three* alleged business practices in connection with GTL's AdvancePay accounts that they claim are deceptive. However, the allegations of the FAC and the judicially noticeable documents demonstrate that Plaintiffs' claims have no merit and should be dismissed as a matter of law.

**GTL Discloses Its Rates and Transaction Fees**. Plaintiffs first claim that GTL fails to disclose the per-minute rates and transaction fees associated with its AdvancePay account. But the judicially noticeable documents, which control over the conclusory allegations in the FAC, demonstrate that GTL does disclose this information. As demonstrated in GTL's concurrently filed Request for Judicial Notice (RFJN), GTL publishes its rates and the terms and conditions of service (including the transaction fees for AdvancePay) in accordance with state and federal law, and Plaintiffs are presumed to

---

[1]    Madeleine Severin, *Is There A Winning Argument Against Excessive Rates for Collect Calls from Prisoners?*, 25 CARDOZO L. REV. 1469, 1471 n.10 (2004).

1

be aware of this information.  *See Smith v. Sprint Commc'ns Co.*, C 96-2067 FMS, 1996 WL 1058204, at *3-5 (N.D. Cal. Sept. 13, 1996) (taking judicial notice of defendant's published rates and granting motion to dismiss).[2]  Accordingly, Plaintiffs cannot state a claim based on a supposed failure to disclose rates and fees.

**Plaintiffs Fail to Allege Causation or Harm Based on GTL's Alleged Practice of Placing Account Holds**.  Next, Plaintiffs claim that, because it must verify calls made by inmates to ensure they are permitted and legitimate, GTL places "holds" on "some amount" of the money in AdvancePay accounts pending verification.  Plaintiffs claim that this practice is undisclosed and can cause customers to have to make additional deposits to their AdvancePay accounts and thereby incur additional transactions fees.  Plaintiffs, however, fail to allege that holds were ever placed on *their accounts* or that any such hold caused them any harm.[3]  Given that each of Plaintiffs' substantive claims requires proof of causation and harm, this failure requires dismissal.

**Plaintiffs Fail to Allege Causation or Harm Based on GTL's Alleged Practice of Not Having A Live Operator 24/7**.  Plaintiffs also allege that GTL was required but failed to have a live operator available 24 hours a day, seven days a week.  But again, Plaintiffs do not allege that they needed but were unable to reach a live operator or that this alleged failure caused them any harm.  This failure requires dismissal.  Furthermore, as explained below, Plaintiffs are simply wrong.  The statute they rely on to claim that GTL must employ a live operator 24/7 does not apply to GTL because it does not provide services to the "public" as required by the statute, but rather provides telecommunication services to prisoners and inmates who are locked in their cells at night and for substantial portions of the day.  In addition, the statute only applies to companies providing "prepaid

---

[2]   Although beyond the scope of this Motion, GTL also provided these individual Plaintiffs with express disclosures of the per-minute rates and transaction fees associated with their calls.  The contrary allegations in the FAC are false.

[3]   Plaintiffs' failure to include this allegation is not surprising given that the underlying allegation about GTL supposedly placing holds on accounts is false and a gross distortion of the true facts.

2

---

NOTICE OF MOTION AND MOTION  FOR DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
LA 129,191,715v1

telecommunications service that allows consumer to originate calls through an access number and authorization code, whether manually or electronically dialed." The FAC includes no such allegations regarding GTL's services.

In addition to these fatal defects, which alone require dismissal of *all* of Plaintiffs' claims, each cause of action suffers from its own terminal flaws. Plaintiffs' purported claim under § 201(b) of the Federal Communications Act fails because this section applies only to interstate or foreign communications and Plaintiffs base their claims only on calls to them in California from prisons and jails in California. Plaintiffs' purported claims under Public Utilities Code Section 2890 fails because this statute governs the *content* of "telephone bills," but Plaintiffs do not allege that GTL sent them any such bill. To the contrary, Plaintiffs allege that GTL sent them nothing at all. Plaintiffs claim under the California Consumer Legal Remedies Act fails because, as explained below, Plaintiffs fail to allege facts showing any violation of the statute. And Plaintiffs' claim under California's Unfair Competition Law should be dismissed because Plaintiffs fail to allege reliance or causation.

For all of these reasons, GTL's motion to dismiss should be granted. If for any reason the Court does not grant some portion of GTL's Motion, the remaining issues should, as explained below, be referred to the California Public Utilities Commission or Federal Communications Commission under the doctrine of primary jurisdiction.

## II.    PLAINTIFFS' ALLEGATIONS

Global Tel*Link Corporation (GTL) provides managed telecommunications services to state and local correctional facilities. These telecommunications services enable incarcerated persons to communicate with family members, friends, and other approved persons outside the correctional facility. GTL provides its telephone service by means of payphones that are located inside the correctional facilities. GTL's services are provided based on contracts it enters into with each state or local facility.

Although customers have a variety of payment and billing options (including direct billing through local exchange carriers, if available and prepaid calling cards), GTL also

3

offers an "AdvancePay" service that allows a customer to establish and maintain a prefunded account. The AdvancePay account allows customers to control the costs of receiving collect calls from inmates and can facilitate communication where GTL does not have a direct billing arrangement with the local exchange carrier for the area in which the customer is located.

To set up an account, customers make an initial deposit of $25.00 or $50.00, and they can make this deposit in several ways, including by cash, check, credit card, or Western Union. For each deposit by credit card and check by phone, GTL charges a transaction fee. For the actual calls, customers are charged in accordance with GTL's published rate schedules, which are published in accordance with state and federal law.

GTL is subject to extensive state and federal regulatory authority that govern its provision of services. Federal law requires GTL to publish its rates on its website including its "current rates, terms and conditions for all of its international and interstate, domestic, interexchange services." 47 C.F.R. § 42.10(a), (b). The regulations provide: "[f]ollowing an inquiry or complaint from the public concerning rates, terms and conditions for such services, a carrier shall specify that such information is available and the manner in which the public may obtain the information." *Id.* § 42.10(a).

State law includes similar requirements. Carriers must post their rates, charges, terms, and conditions on their Internet website and the web posting must contain certain disclosures. *See* CAL. INDUS. R. 5.2 (as modified in Decision 07-09-019 (Sept. 6, 2007) & further modified in Decision 08-05-019 (May 15, 2008)); *see also* Cal. Pub. Util. Code § 495.7(c)(1), (2). Rule 5.2 requires companies, like GTL, to "publish, at a site on the Internet, the applicable rates, charges, terms, and conditions for that detariffed service or bundled offering. CAL. INDUS. R. 5.2. As explained below, these rules and regulations are part of a complex regulatory framework that governs how carriers are to provide information to customers about rates and charges.

In accordance with federal and state law, GTL publishes on its website information about rates and services, including the transaction fees associated with AdvancePay.

GTL provides detailed information about its rates and charges for intrastate call, including per-minute charges for the first minute and each additional minute. (RFJN, Exs. G, H, I at § 1, Ex. J at § 1.4.) GTL also specifically discloses that customers can fund an AdvancePay account by cash, check, credit card or Western Union. (RFJN, Exs. G, H, I at § 1, Ex. J at § 1.5.) "Transaction fees will apply for credit card and check by phone transactions." (*Id.*). GTL makes the same disclosures regarding its interstate and international rates and charges. (RFJN, Exs. K, L, M at § 3.5.4, §§ 3.6-3.7.)

Notwithstanding these disclosures, Plaintiffs Nadia Alvarez and Rachel Fishenfeld have filed this lawsuit, attempting to assert claims based on a purported nondisclosure of rates, transactions fees and certain other practices. Plaintiff Alvarez alleges that she lives in Los Angeles and, in "about" February 2009, established an AdvancePay account to communicate with someone incarcerated at a jail in Los Angeles. (FAC ¶¶ 24-25.) Alavarez does not allege any calls outside California. Alvarez alleges she made an initial deposit of $25.00 by credit card to set up her account. (*Id.*) She further alleges that GTL "failed to disclose" that she would be charged a transaction fee or the "per-minute rates" she would be charged. (*Id.* ¶¶ 24, 26.) Alvarez also alleges that GTL "failed to disclose" an alleged practice of "holding" "some amount" of her account while calls from incarcerated persons were being validated. (*Id.* ¶ 25.) Alvarez, however, fails to allege that she was subjected to this practice or that she suffered any harm as a result.

Plaintiff Fishenfeld's allegations are similar. She alleges that she is a resident of Calabasas, California and that, between March and April 2009, she used GTL's services to communicate with a person incarcerated in a Los Angeles jail. (FAC ¶ 27.) She also alleges that beginning in "about" April 2010 and until June 2010, she used GTL's services to communicate with a person in another Los Angeles jail, who was later moved to North Kern County State Prison. (*Id.* ¶¶ 28-29.) Like Alvarez, Fishenfeld does not allege any calls outside of California. She further alleges that, during this period, she set up an AdvancePay account and made several deposits of $25.00 and $50.00, totaling about $550 in prepayments. (*Id.* ¶¶ 30, 33.) And she claims, like Alvarez, that GTL did

not disclose its transaction fees or "per-minute rates." (*Id.* ¶¶ 30, 32.)  She also alleges that GTL failed to disclose its alleged practice of "holding" "some portion" of an account pending phone number verification.  Like Alvarez, Fishenfeld does not allege that she was subjected to this alleged practice or that it caused her any harm.  (*Id.* ¶ 31.)  Finally, Alvarez and Fishenfeld allege that GTL is required, but does not, provide a live operator 24 hours a day, 7 days a week.  (*Id.* ¶ 22.)  Neither, however, alleges she needed but was unable to reach a live operator or that this alleged failure caused any harm.

Based on these allegations, Plaintiffs attempt to assert several claims.  The only substantive federal claim is under Section 201 of the Federal Communications Act of 1934, as amended (the Act), which governs interstate and international services.  (FAC ¶¶ 55-59.)  Plaintiffs assert this claim, notwithstanding their failure to allege any interstate or international telephone call.  Plaintiffs also assert a purported claim under California Public Utilities Code Section 2890, which governs the content of "telephone bills," although Plaintiffs fail to allege GTL ever sent them such a bill.  (*Id.* at 87-94.) Plaintiffs allege claims for purported violations under California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) based on GTL's allegedly deceptive practice of not disclosing its rates and transactions fees—which actually are disclosed—and its alleged practices of "holding" some amount of an AdvancePay account pending call verification and not having a live operator 24/7, notwithstanding Plaintiffs' failure to allege they were subjected to these alleged practices.  (*Id.* ¶¶ 64-86.) Plaintiffs also include a request for declaratory judgment, which is based on their other claims.  (*Id.* ¶¶ 60-63.)  As explained below, each of these claims is fatally defective and should be dismissed as a matter of law.

## III.   ARGUMENT

### A.   Legal Standard for This Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

A plaintiff cannot rely on "'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,'" or "'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Conder v. Home Sav. of Am.*, 2010 WL 2486765, at *2 (C.D. Cal. June 14, 2010). The Court need not accept "allegations contradicting documents … that are properly subject to judicial notice." *Lazy Y Ranch Ltd v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

**B.   All Plaintiffs' Claims Should Be Dismissed Because The Business Practices Upon Which They Rely Cannot Support a Claim for Relief.**

Each of Plaintiffs' claims is based on one of three of alleged practices: (1) a purported failure to disclose calling rates and transaction fees on the AdvancePay account; (2) a purported failure to disclose a practice of "holding" "some amount" of the customer's AdvancePay account pending number verification; and (3) the alleged failure to have a live operator to answer incoming calls on a toll free number 24 hours a day, seven days a week. (FAC ¶¶ 15-22.) Each allegation fails to state a claim.

*GTL Discloses Its Rates and Transaction Fees In Accordance With State and Federal Law.* Plaintiffs' purported claims based on alleged failure to disclose rates and transaction fees fails because, as demonstrated by judicially noticeable documents, GTL does disclose its rates and transaction fees, all in accordance with state and federal law.

Under Section 203 of the FCA, all carriers are required to publish schedules of their charges, *i.e.*, tariffs. In 1996, the FCC exercised its authority (under 47 U.S.C §160) to forbear from the requirements of Section 203 by no longer allowing or requiring nondominant interexchange carriers to file tariffs. This requirement is in 47 C.F.R. § 61.19 and the following orders: *In re Policy & Rules Concerning The Interstate, Interex-Change Marketplace*, FCC 96-424, 11 FCC Rcd. 20730 (1996); *see also* FCC 97-293, 12 FCC Rcd. 15015 (1997) & DA 00-2586, 15 FCC Rcd. 22321 (2000).

Under these rules, GTL is subject to mandatory detariffing, and is no longer allowed to file tariffs with the FCC. Rather, GTL is required to publish its interstate rates, terms, and conditions on its website pursuant to 47 C.F.R § 42.10, which requires nondominant interexchange carriers to make available information concerning their

1  current rates, terms, and conditions for international and interstate interexchange services

2  at a public location, and if the carrier maintains a website, on the website.

3       Section 495.7 of the Public Utilities Code allows the California PUC to dispense

4  with certain tariffing requirements. CAL. PUB. UTIL. CODE § 495.7. In 1996, the PUC

5  determined that nondominant interexchange carriers, like GTL, were no longer required

6  to file tariffs. As a condition of detariffing, carriers must post their rates, charges, terms,

7  and conditions on their Internet website and the web posting must contain certain

8  disclosures. *See* CAL. INDUS. R. 5.2 (as modified in Decision 07-09-019 (September 6,

9  2007) and further modified in Decision 08-05-019 (May 15, 2008)); *see also* CAL. PUB.

10 UTIL. CODE § 495.7(c)(1), (2). Rule 5.2 requires companies, like GTL, to "publish at a

11 site on the Internet the applicable rates, charges, terms and conditions for that detariffed

12 service or bundled offering." CAL. INDUS. R. 5.2. GTL also must provide the PUC with

13 a link to this webpage for accessing and reviewing its rates, terms and conditions. *Id.*

14       These requirements are part of a complex and carefully crafted regulatory scheme

15 that balances the need for public disclosure of rates and other terms with the burden on

16 the industry. For example, in promulgating it rules requiring publication of rates and

17 other terms on the company's Internet website, the California PUC analyzed consumer

18 and industry proposals and ultimately opted for requiring Internet posting, explaining:

19            These requirements for webposting will further satisfy requirements of

20            Pub. Util. Code § 495.7(c)(1) and ensure availability of information about

21            rates, terms, and conditions of detariffed services; promote the

22            Commission's goals for increasing consumer access to information about

23            the choices in the marketplace; and prevent customer confusion.

24 Opinion Adopting Telecommunications Industry Rules at 18, 49-53 (July 23, 1998)

25 (quoted text on page 50.)

26       In accordance with these rules and regulations, GTL publishes on its website

27 information about rates and services, including the transaction fees associated with

28 AdvancePay. GTL provides detailed information about it rates and charges for intrastate

8

1  call, including charges for the first minute and each additional minute.  (RFJN, Exs. G,

2  H, I at  § 1, Ex. J at § 1.4.)  GTL also specifically discloses that customers can fund an

3  AdvancePay account by cash, check, credit card or Western Union. (RFJN, Exs. G, H, I

4  at § 1, Ex. J at § 1.5.)  "Transaction fees will apply for credit card and check by phone

5  transactions."  (*Id.*).  GTL makes the same disclosures regarding its interstate and

6  international rates and charges.  (RFJN, Exs. K, L, M at § 3.5.4, §§ 3.6-3.7.)

7      Because utility rates are subject to a complex regulatory system that requires them

8  to be set forth in public documents, a consumer is presumed aware of the filed rate.

9  *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000) ("customers are also charged

10  with notice of the terms and rates set out in that filed tariff"); *Smith v. Sprint Commc'ns

11  Co.*, 1996 WL 1058204, at *5 (N.D. Cal. Sept. 13, 1996) (same).  For example, in *Sprint*,

12  the plaintiff attempted to assert a claim based on the allegations that the defendant

13  supposedly did not disclose its practice of rounding up to the next minute.  The defendant

14  argued that its rate schedules disclosed this information and were publicly available, thus

15  negating plaintiff's claim.  The court agreed, explaining that the California PUC "has

16  statutory authority to regulate billing practices and disclosure of those practices in the

17  telecommunications industry." *Id.* at *5.  "Sprint expressly disclosed its practice of

18  rounding up in its Cal. PUC tariff. Because the filed rates are a matter of public record,

19  and consumers are presumed to know these rates, plaintiff cannot state a claim with

20  respect to Sprint's intrastate billing practices." *Id.* at *5-7 (also concluding that, to the

21  extent there was any question about Sprint's practices, they should be referred to the

22  regulatory agencies under the primary jurisdiction doctrine).

23      The same basic analysis applies here.  In accordance with state and federal law,

24  GTL publicly discloses its rates and terms and conditions of service, including per-

25  minute charges and the transaction fees associated with an AdvancePay account.  As

26  shown, these disclosures are required by law and were designed to increase consumer

27  access to information and prevent confusion.  As in *Smith*, GTL's rates and transaction

28  fees are a matter of public record, consumers are presumed to know them, and Plaintiffs

**NOTICE OF MOTION AND MOTION  FOR DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
LA 129,191,715v1

cannot state a claim based on an alleged failure to disclose.  Put simply, the rates and transaction fees *were* disclosed as a matter of law and Plaintiffs' claims should be dismissed.  *See Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010) (dismissing where judicially noticeable documents demonstrated allegedly undisclosed information was disclosed).[4]

***Plaintiffs Fail To Allege Any Harm Based on GTL's Alleged Practice of "Holding" "Some Amount" in Their Accounts***.  Plaintiffs also attempt to state a claim by alleging that GTL failed to disclose its alleged practice of "holding" "some amount"

---

[4]   Plaintiffs cannot avoid this result by pointing to the detariffing of the telecommunications industry and arguing that the "filed-rate" doctrine no longer applies.  As the Ninth Circuit has explained, where the filing and disclosure of rates "is still required by statute or regulation, the filed-rate doctrine continues to apply with full force."  *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1084 (9th Cir. 2006).  California courts have held that the doctrine still applies to completely *voluntary* filings.  *See Gallivan v. AT&T Corp.*, 124 Cal. App. 4th 1377, 1383-88 (2004) (even after detariffing, filed rate doctrine applied to bar claims where defendant made voluntary filing of its rates).  Here, as shown, GTL is required by federal and state law to publish information about its rates and terms of service and is required to provide that information to the PUC.  GTL does so, pursuant to an express regulatory requirement that was designed to provide information to consumers.  If a *voluntary* regulatory filing is sufficient to trigger the doctrine, *a fortiori* GTL's mandatory regulatory disclosures should do the same.  Moreover, GTL is not relying on the filed-rate doctrine *per se*, but rather the corollary principles of constructive notice and that where disclosures were provided in accordance with a regulatory requirement, the plaintiff cannot state a claim based on a purported nondisclosure.  *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1148-49 (2003) (disclosure of yield spread premium in accordance with HUD regulations defeated any claim based on alleged nondisclosure, including UCL claim); *see also Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 965-66 (2003) ("[T]here is no requirement that reasonable notice has to be the best possible notice.").  Indeed, when Plaintiffs used GTL's services, they were, at a minimum, on notice that there was gong to be a charge for those services – *and Plaintiffs do not allege that they were unaware of GTL's rates and charges.  See* Cal. Civ Code § 19 ("Every person who has actual notice of circumstances sufficient to put a prudent man on inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.").  As a matter of law, Plaintiffs are charged with knowledge of GTL's published rates and terms of service.1

10

1  of a customer's AdvancePay account pending verification of the call.  Although GTL

2  disputes this allegation, Plaintiffs' claim fails as a matter of law because they do not

3  allege any harm based on this alleged nondisclosure.

4      Each of Plaintiffs' substantive claims requires that they have suffered harm caused

5  by the allegedly improper business practice.[5]  Plaintiffs, however, make no such

6  allegation.  They do not provide any specific instance where they were subjected to this

7  alleged hold, nor do they allege that any such hold caused them any harm.  Because

8  Plaintiffs have not alleged that they experienced this alleged business practice or that it

9  caused them harm, their claims should be dismissed.

10     ***Plaintiffs Fail to Allege Any Harm Based on GTL's Supposed Failure to Have a***

11 ***Live Operator 24/7.***  Plaintiffs also attempt to state a cause of action by claiming GTL is

12 required, but fails, to provide a live operator to answer toll-free calls 24/7.  But again,

13 Plaintiffs do not allege any instance in which they needed to call GTL, but were unable to

14 reach a live operator.  Nor do Plaintiffs allege that they were harmed in any way by this

15 alleged failure.  Accordingly, Plaintiffs have not alleged causation or harm and their

16 claims should be dismissed.

17     This claim also fails because, as a matter of law, GTL is not required to supply a

18 live operator 24/7.  The relevant statute applies only to a "company" providing "prepaid

19 calling services" or calling cards.  CAL. BUS. & PROF. CODE § 17538.9(b)(9). "Company"

20 is defined as an entity "providing prepaid calling services to the *public* using its own or a

21 resold telecommunications network." *Id.* at § 17538.9(a)(3).  And "prepaid calling

22

---

23 [5]    *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809 (2007) ("'Relief

24 under the CLRA is specifically limited to those who suffer damage, making causation a

necessary element of proof.'  Accordingly, 'plaintiffs in a CLRA action [must] show not

25 only that a defendant's conduct was deceptive but that the deception caused them

harm.'"); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1164 (N.D. Cal. 2008) (same); *In re*

26 *Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) (UCL claim requires named plaintiff to

27 prove "injury in fact" and that he or she "lost money or property" "as a result of" the

alleged business practice); 47 U.S.C. § 206 (only providing cause of action for those

28 "injured" by alleged violation of FCA).

11

services" is defined as a "prepaid telecommunications service that allows consumers to originate calls through an access number and authorization code, whether manually or electronically dialed." *Id.* at § 17538.9(a)(6).

But the FAC does not include any allegation showing how or why this statute would apply to GTL. Plaintiffs do not allege anything about an "access number" or "authorization code" that allowed them to "originate" calls. For this reason alone, the statute does not apply. Furthermore, according to the FAC, GTL does not provide prepaid phone service to the "public"; it provides service to prisoners and inmates "by means of payphones that are located inside the correctional facilities" and that "enable incarcerated persons to communicate by telephone with family members, friends, and other persons" outside the correctional facility. (FAC ¶ 12.) Thus, according to Plaintiffs' own allegations, GTL provides service to prisoners and inmates, who are confined to their cells at night and for portions of the day when they are unable to access the payphones. This confinement underscores why it makes no sense that GTL would be required to have a live operator 24/7 and why the statute does not apply.

**C.     Each of Plaintiffs' Claims Should Be Dismissed for Additional Reasons.**

**1.     The FAC Must Satisfy Federal Rule of Civil Procedure 9(b)**

The Ninth Circuit has ruled that Rule 9(b)'s heightened pleading standards apply to claims, like those present here, which are grounded in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to UCL claim); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) (applying Rule 9(b) to state false advertising claims that sounded in fraud). Under this rule, any cause of action "grounded in fraud" or that "sounds in fraud" must "as a whole" satisfy the particularity requirements of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Sanford v. Memberworks, Inc.*, 2010 WL 4158602, at *3 (9th Cir. Oct. 25, 2010) ("'[T]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"). Here, Plaintiffs' claims are

grounded in fraud – they allege that GTL "fails to inform" customers of rates, fees and other practices, that GTL "used deceptive representations," and that GTL's practices "have deceived" Plaintiffs. (FAC ¶¶ 1, 16, 25, 30-31, 69, 84.) Therefore the FAC must satisfy Rule 9(b), but fails to satisfy even the more modest standards of Rule 8.[6]

## 2. Plaintiffs' Do Not Have Standing to Assert a Claim Under Section 201 Because Their Calls Were *Intra*state.

Plaintiffs' First Cause of Action is a purported claim under Section 201 of the Federal Communications Act . Section 201 provides that "[i]t shall be the duty of every common carrier engaged in *interstate or foreign communication* by wire or radio to furnish *such communication service* upon reasonable request therefor." 47 U.S.C. § 201(a). The statute goes on to provide that "[a]ll charges, practices, classifications, and regulations for and in connection with *such communication service*, shall be just and reasonable." *Id.* § 201(b). Thus, for Section 201(b) to apply, there must be an "interstate or foreign communication." *See, e.g., Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 370, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986) ("[T]his provision fences off from FCC reach or regulation intrastate matters-indeed, including matters 'in connection with' intrastate service."); *Chladek v. Verizon N.Y. Inc.*, 96 Fed. Appx. 19, 22 (2d Cir. 2004) ("The Communications Act of 1934 does not apply to communications services that are purely intrastate in nature.").[7]

Plaintiffs fail to allege that they engaged in any interstate or foreign communication using GTL's service, instead alleging only *intrastate* communications. Alvarez alleges she is a resident of Los Angeles and bases her claims on calls from jails

---

[6] ‖ Rule 9(b) requires that Plaintiffs allege the "who, what, when, where, and how" of the fraud with particularity. *Kearns*, 567 F.3d at 1124. A complaint satisfies this standard only if it provides "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 758, 764 (9th Cir. 2007).

[7] ‖ *But cf. AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 381, 119 S. Ct. 721, 142 L. Ed. 2d 835 (1999) (§ 201(b) gives FCC authority to regulate certain intrastate services only when it has explicitly been given rulemaking authority over such services in a separate provision of the Act).

13

1  in Los Angeles. (FAC ¶¶ 24-26.)  Fishenfeld alleges she resides in Calabasas, California

2  and bases her claims on calls from jails in Los Angeles and other locations in California.

3  (FAC ¶¶ 27-33.)  Because Plaintiffs allege only intrastate communications, Section

4  201(b) does not apply.

5       Plaintiffs also attempt to state a claim under Section 201(b) by citing the "Truth in

6  Billing" regulations promulgated by the FCC.  (FAC ¶ 58.)  The FCC's Truth in Billing

7  regulations, 47 C.F.R. §§ 64.2400-2401, were adopted pursuant to the FCC's authority

8  under Section 201(b) to address unreasonable *interstate* practices and its authority to

9  address slamming pursuant to Section 258 of the Act. *In re Truth-in-Billing & Billing*

10  *Format*, 14 FCC Rcd. 7492, ¶ 21 (1999) ("*TIB Order*"); *see also* 47 U.S.C. § 258.[8]

11  Although the FCC's authority to address slamming extends to both interstate and

12  intrastate communications, this rule has no applicability in this case because this case is

13  not about "slamming" – it is about GTL's disclosure of rates and transactions charges.

14  As the FCC has noted:

15             Our truth-in-billing principles and guidelines also will

16             deter carriers from engaging in unjust and unreasonable

17             practices in violation of section 201(b).  Under section 201(b),

18             carrier practices must be just and reasonable. . . . [T]he

19             Commission has authority to promulgate rules implementing

20             that requirement *as to the provision of interstate services.*

21  *TIB Order* ¶ 24, at 7506 (emphasis added); *see also In re Truth-in-Billing & Billing*

22  *Format*, 20 FCC Rcd. 6448, n.144 (2005) (noting the limitations of the FCC's authority

23  over "exclusively intrastate services, pursuant to section 201(b) of the Act"), *overturned*

24  *on other grounds, Nat'l Ass'n Of State Util. Consumer Advocates v. F.C.C.*, 457 F.3d

25  1238 (11th Cir. 2006), *op. modified,* 468 F.3d 1272 (11th Cir. 2006).  Thus, Plaintiffs'

26

27  [8]    "Slamming" refers to the practice of changing a consumer's preferred

28  telecommunications carrier without receiving proper authorization from the consumer.
   *See generally* 47 C.F.R. §§ 64.1100-1190.1

attempt to state a claim based on the FCC's regulations fails for the same reason as the Plaintiffs' Section 201(b) claim, namely that Plaintiffs do not base their claims on any interstate communication, instead relying only on calls within California.

Plaintiffs' reliance on the FCC's Truth in Billing regulations fails for second reason, namely that Plaintiffs do not identify any "telephone bill" from GTL to which the regulations would apply.  The truth-in-billing regulations govern the organization and content of "telephone bills".  47 C.F.R. § 64.2401.  Plaintiffs, however, do not allege that they received any telephone bills, nor do they allege any facts showing any violation of the FCC's regulations regarding the format and contents of a carrier's "telephone bill." To the contrary, Plaintiffs allege GTL did not send them any documentation.  (FAC ¶¶ 18, 21, alleging customers receive no account statements and "no documentation at any time" from GTL.)  In the absence of a telephone bill, Plaintiffs cannot state a claim under these FCC's regulations.  The claim should be dismissed in its entirety. *See Sanford*, 2010 WL 4158602, at *6 ("When a named plaintiff has no cognizable claim for relief, 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.'").

### 3. Plaintiffs' Claim Under Public Utilities Code Section 2890 Should Be Dismissed Because Plaintiffs Do Not Allege They Received Any Telephone Bill from GTL.

Like the truth-in-billing regulations, Section 2890 of the California Public Utilities Code provides requirements for the content of a "telephone bill."  But again, Plaintiffs have not alleged that any such bill was sent to them and actually allege to the contrary. (FAC ¶¶ 18, 21, alleging customers receive no account statements and "no documentation at any time" from GTL.)  In the absence of a telephone bill, Plaintiffs cannot state a claim under Section 2890.

This claim also should be dismissed because, even if there were a telephone bill, Plaintiffs cannot allege any violation of Section 2890.  Plaintiffs' only allegation on this score is that they incurred "unauthorized" charges, supposedly because GTL failed to disclose its rates and transactions fees.  (FAC ¶¶ 87, 89, 91 (referring to and

15

incorporating prior allegations about nondisclosure of rates and fees).)  But as shown, GTL did disclose this information in accordance with federal and state law and thus Plaintiffs' Section 2890 claim must fail for this additional reason.

### 4.     Plaintiffs' CLRA Claim Fails for Additional Reasons.

Plaintiffs' purported claim under the CLRA also fails because they do not allege any cognizable violation of the statute.  To demonstrate a violation of the CLRA, Plaintiffs must allege facts showing a violation of the statute's specific restrictions.  CAL. CIV. CODE § 1770.  But Plaintiffs' allegations are wholly conclusory.

**First**, Plaintiffs cites section 1770(a)(4)'s restriction on using "deceptive representations or designations of geographic origin" as a purported basis for a CLRA claim.  But this section is inapplicable, as it is limited to deceptive representations regarding "geographic origin."  *Aaron v. U-Haul Co.*, 143 Cal. App. 4th 796, 808 (2006). The FAC makes no such allegation.  **Second**, the FAC references the restriction in section 1770(a)(5) on representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Again, this section is inapplicable, as the FAC does not allege that GTL made any such representation.  **Third**, Plaintiffs cite section 1770(a)(14)'s restriction on representing that "a transaction confers or involves rights, remedies, or obligations which it does not have or involve."  But again, Plaintiffs fail to allege that GTL made any such representation.

The FAC's vague and conclusory allegations, which merely parrot the language of the statute, do not state a claim for relief under the CLRA and the claim should be dismissed for this additional reason.  *See Ford v. Hotwire, Inc.*, 07-CV-1312 H(NLS), 2007 WL 6235779, at *5 (S.D. Cal. Nov. 19, 2007) ("The complaint fails to discharge Plaintiff's obligation … under Rule 8(a)(2) 'to provide the grounds of his entitlement to relief [with] more than labels and conclusions….'"); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 2009 WL 1703285, at *5 (C.D. Cal. June 17, 2009) ("Although Plaintiffs have liberally incorporated the modifiers 'false' and 'deceptive'

16

NOTICE OF MOTION AND MOTION  FOR DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
LA 129,191,715v1

1  into their Amended Complaint, they have not added any substantive allegations or

2  adequately fleshed out their claims of fraud.").

3      **5.    Plaintiffs' UCL Claim Also Fails Because They Do Not Allege Reliance and the Equitable Abstention Doctrine Applies.**

4      The California Supreme Court has concluded that the language "as a result of" in

5  the UCL imposes an actual reliance requirement on plaintiffs prosecuting a private

6  enforcement action. *In re Facebook PPC Adver. Litig.*, 2010 WL 3341062, at *9 (N.D.

7  Cal. Aug. 25, 2010) (discussing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)).[9] "This

8  requirement extends to claims both of misrepresentations and fraudulent omissions." *Id.*

9  "'[R]eliance is proved by showing that the defendant's misrepresentation or

10  nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct." *Id.*

11  (quoting *Tobacco II Cases*, 46 Cal. 4th at 326); *see also In re Actimmune Mrktg. Litig.*,

12  2009 WL 3740648, at *10-11 (N.D. Cal. Nov. 6, 2009) (dismissing UCL claim for

13  several reasons, including failure to allege reliance on omissions).

14      The FAC, however, is devoid of any allegations showing reliance by Plaintiffs.

15  (FAC ¶¶ 23-34.)  Plaintiffs do not allege that they were unaware of GTL's calling rates

16  and transaction fees.  They do not allege that, had there been some additional disclosure

17  (beyond what GTL provided in accordance with state and federal) that they would have

18  acted any differently.  And Plaintiffs do not allege anything about why, after using GTL's

19  services and thereby learning about the fees and charges, they continued making

20  AdvancePay deposits to pay for calls with incarcerated persons.  Given Plaintiffs' total

21  failure to allege any facts showing reliance, let alone the "specific" facts required by Rule

22

---

23  [8]   Because Plaintiffs' claim under each prong of the UCL are based on alleged
24  nondisclosures and thus sound in fraud, they must allege actual reliance. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) ("A consumer's burden of pleading
25  causation in a UCL action should hinge on the nature of the alleged wrongdoing rather
26  than the specific prong of the UCL the consumer invokes…. [W]e conclude the reasoning
of Tobacco II applies equally to the 'unlawful' prong of the UCL when, as here, the
27  predicate unlawfulness is misrepresentation and deception."); *Baxter* 2010 WL 3791487,
28  at *5 (dismissing claims under all prongs of UCL, holding "[t]he fact that Plaintiffs
cannot find a basis for actual reliance means that the UCL and FAL claims must fail")

17

9(b), the UCL claims should be dismissed.

The Court also should dismiss the UCL claim under the doctrine of equitable abstention. "It is well established that a court of equity will abstain from employing the remedies available under the unfair competition law in appropriate cases." *Ctr. for Biological Diversity, Inc. v. FPL Group, Inc.*, 166 Cal. App. 4th 1349, 1371 (2008). Equitable abstention is appropriate, for example, where a claim would drag a court of equity into an area of complex policy, because it is primarily a legislative or regulatory function to determine the best policy. *Shamsian v. Dep't of Conservation*, 136 Cal. App. 4th 621, 641-42 (2006). As shown, the federal and state regulations pursuant to which GTL publishes it rates and transaction fees is a complex set of administrative and regulatory requirements that should be administered consistently with the guidance of the PUC and FCC. The Court should decline Plaintiffs' invitation to inject itself into this carefully crafted regulatory regime, leaving the issue (to the extent there is one) to the regulators. *See Feitelberg v. Credit Suisse First Boston LLC*, 134 Cal. App. 4th 997, 1009 (2005).

### 6. Plaintiffs' Request for Declaratory Judgment Fails Along With Their Other Claims.

Plaintiffs also assert a claim for declaratory relief, but base that claim on their other substantive claims. Given that each of Plaintiffs' substantive claims is fatally defective, the declaratory relief claims should be dismissed as well.

### D. To the Extent the Court Does Not Dismiss Any Claim, This Case Should Be Referred to the Public Utilities Commission or the Federal Communications Commission Under The Primary Jurisdiction Doctrine.

As shown, the Court can and should dismiss this case in its entirety. But to the extent the Court does not, it should refer any remaining issues to the appropriate regulatory authorities. The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Courts look for four factors when applying the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been

1 placed by Congress within the jurisdiction of an administrative body having regulatory

2 authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive

3 regulatory scheme that (4) requires expertise or uniformity in administration." *Davel*

4 *Commc'ns v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006).

5       The primary jurisdiction factors are satisfied in this case and further support

6 dismissal of Plaintiffs' claims. As shown, the California PUC regulates intrastate carriers

7 by enforcing the terms of the California Public Utility Code. The PUC requires carriers,

8 like GTL, to post the applicable rates, charges, terms, and conditions for their services on

9 their Internet website, and the web posting must contain certain disclosures.[10] As shown,

10 the PUC promulgated these rules as part of a comprehensive regulatory scheme,

11 balancing the need for disclosure with the burdens on the industry to ensure uniformity.[11]

12 The FCC likewise has authority to comprehensively regulate the actions and practices of

13 telecommunications carriers. Pursuant to this authority, the FCC requires carriers like

14 GTL to publicly disclose its rates and terms of service on its website.[12] The FCC and

15 California PUC both have complaint and dispute-resolution procedures under which

16 consumers can ask the regulatory authorities to investigate and address alleged violations

17 of applicable telecommunications laws and regulations, including allegations such as

18 those alleged here. (RFJN, Kiser Decl. ¶ 6).

19       The FCC is using its regulatory authority to address issues related to this case. For

20 example, the FCC currently is reviewing whether to extend and apply its certain

21 regulatory requirements to "the information available to consumers at all stages of the

22 purchasing process, including: (1) choosing a provider, (2) choosing a service plan, (3)

23 managing use of the service plan, and (4) deciding whether and when to switch an

24 _____

[9]     CAL. INDUS. R. 5.2; *see also* CAL. PUB. UTIL. CODE § 495.7(c)(1), (2) (requiring the

25 CPUC to adopt "(1) [r]ules regarding the availability of rates, terms, and conditions of

26 service to consumers" and "(2) [r]ules regarding notices to consumers of rate increases and decreases, changes in terms and conditions of service, and change of ownership" as a

27 precondition of detariffing).

28     Opinion Adopting Telecom. Industry Rules at 18, 49-53 (July 23, 1998)

[2 1]     47 C.F.R. § 42.10(a), (b).

existing [carrier] or plan."[13]  The FCC's consideration of these issues makes it particularly appropriate to invoke the doctrine of primary jurisdiction.  *Hart v. Comcast of Alameda*, 2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) ("[T]he court concludes that the FCC is already using its recognized expertise to consider some of the exact questions placed before the court here, in an effort to promote uniformity in internet broadband regulation. As such, all prerequisites for application of the primary jurisdiction doctrine are satisfied.").

Where, as here, a case raises issues falling within an agency's primary jurisdiction, the district court enables "referral" of the issue to the agency. *Davel*, 460 F.3d at 1087. Whether to stay or dismiss without prejudice a case within an administrative agency's primary jurisdiction is a decision within the discretion of the district court. *Id.* at 1091. The factor most often considered in determining whether a party will be disadvantaged by dismissal without prejudice is whether there is a risk that the statute of limitations may run on the claims pending agency resolution of threshold issues. *Id.* Given that Plaintiffs' claims are very recent (2009-2010), there is little risk the statute of limitations may run. Thus, to the extent the Court does not dismiss Plaintiffs' claims on the merits, it should do so under the primary jurisdiction doctrine.

## IV.   CONCLUSION

For these reasons, GTL respectfully requests that this Court dismiss Plaintiffs FAC it its entirety.  In the alternative, GTL respectfully requests that the Court stay this case pending referral of any remaining issues to the California PUC or FCC.

DATED:  November 23, 2010

Respectfully submitted,
GREENBERG TRAURIG, LLP

By _____ /s/ Robert J. Herrington _____
ROBERT J. HERRINGTON
Attorneys for GLOBAL TEL*LINK
CORPORATION

---

[3]    *In re Consumer Inform. & Disclosure, etc.*, 24 FCC Rcd. 113880, ¶ 4, at 3 (2009).

20